[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Atty. Donald Olmstead Atty. Maureen Donahue Atty. Jeffrey Nicholas
MEMORANDUM OF DECISION
Michelle Appell was 7.3 years of age when her legal guardian, to Department of Children, and Youth Services, (DCYS), filed the petition. presently before the court seeking to terminate the parental rights to Beverly Appell and William Appell her biological parents. The termination petition was filed on July 10, 1990 alleging against the respondent mother all four of the non-consensual grounds for such termination as set forth in subsection (b) of Section 17-43a of the Conn. Gen. Stat. (Rev. 1989). The petition further alleged that the biological father was consenting to the termination of his parental rights as provided by subsection (b) of Conn. Gen. Stat. 17-43a.
Michelle is a child who was committed to the care and custody of the petitioner, DCYS, as a neglected and uncared for child on May 4, 1989. This commitment was based upon a neglect petition filed with the court on March 23, 1989. At the time of commitment the mother was whereabouts unknown although she was properly served by publication. The father has always been represented by counsel. The mother has been represented by CT Page 2449 court appointed counsel for the termination proceedings as it was finally determined on July 10, 1990 that she was living out of state.
On December 21, 1989 there was an in court review wherein court expectations which were previously established on May 4, 1989 were reinforced and again made part of the record. The father was advised of the possibility of termination petitions being filed. Again, the mother was whereabouts unknown.
Finally, on July 10, 1990 the DCYS filed the present petition for termination of parental rights. The plea hearing was scheduled for August 9, 1990. At that time service was confirmed on both parents who were absent. The attorney for the father was also absent not having received notice. The court continued the matter to September 13, 1990 and appointed an attorney for the mother.
On September 13, 1990 the father and his counsel were present as well as the mother's counsel. The mother remained absent and the court confirmed notice on the mother. On this date the court thoroughly canvassed the father as to his consent to termination and found that the father with the advice and effective assistance of counsel had consented to termination knowingly and voluntarily.
At the request of the mother's attorney, the matter was continued to September 27, 1990 to allow further time to communicate with the mother out of state as to her position. The September 27, 1990 date was deemed a firm and final date and the court reserved decision on terminating the parental rights of the father until after the hearing regarding the mother
On September 27, 1990 the counsel for the mother indicated that the mother would not be appearing nor had she mailed back "consent to termination" forms. By agreement of the parties the petitioner entered the following exhibits: Exhibit A; DCYS treatment plan dated 1/14/88 with reference to page 2 as to expectations; Exhibit B; court ordered psychological evaluation by Dr. Barbara Berkowitz dated 7/20/89; Exhibit C; psychological evaluation by Dr. David Mantel dated 5/26/90; Exhibit D; DCYS termination social study dated 8/8/90; Exhibit E; DCYS treatment plan dated 7/10/90 with cover letter to the mother in Kansas. The petitioner further requested the court to take Judicial notice of the neglect and uncared for petition and summary of facts filed with the court on 3/23/89. The court granted said request.
The matter was then scheduled for October 11, 1990 for oral argument but due to judicial scheduling conflicts on that date the parties agreed to file written briefs and the court so ordered that briefs be filed on November 9, 1990.
The petitioner has alleged against the mother the four non-consensual grounds for termination as set forth in subsection (b) of Sec. 17-43a of CT Page 2450 the Conn. Gen Stat. The petitioner has further alleged that all three grounds have existed for not less than one year.
The respondent claims one that the petition has been improperly brought in; that the petition was not sworn and subscribed to as required; two, that the State has failed, to meet its burdens proof in this matter; and three, that the court cannot make the required findings under Conn. Gen. Stat. Sec. 45-61f (h).
The evidence and exhibits offered at trial and interpreted in light of the prior record in this court of which the court has taken judicial notice support the finding of the following facts:
Michelle Appell was born on April 29, 1983 and became the subject of DCYS intervention as early as June 27, 1983 when the mother sought to voluntarily place Michelle into foster care indicating that she didn't want the baby anymore. The parents were suffering from numerous marital difficulties and housing and employment problems. The child was being neglected medically and physically by the mother and the mother had left the home. After the voluntary placement on June 7, 1983 the infant was returned home after several weeks.
Michelle was again voluntarily placed into foster care between September 11, 1985 and December 16, 1985 at the request of the father due to the mother again leaving the home. The child was found to be six months behind in her immunizations. In December of 1985 the child was returned to her parents and DCYS Dept the case opened as a protective services case until September 30, 1986
Referrals were again received by DCYS on March 1, 1987 regarding the father's arrest for drunken driving and having Michelle in the vehicle with him. The father was also arrested for risk of injury to a minor. The mother than took Michelle and separated from the father and moved to Southington but subsequently returned to the Winsted area.
Referrals were again received on November 19, 1987, November 25, 1987 and November 29, 1987 alleging that the mother was leaving Michelle unsupervised in the middle of the night and that Michelle was found during the daytime wandering the streets only in a bathing suit. Michelle at that time was only four years of age.
On December 21, 1987 both parents were arrested for risk of injury to a minor. The Superior Court criminal matters ordered the mother not to leave Michelle alone and to cooperate with DCYS services. The mother never cooperated with DCYS. (Termination Study; Exhibit D; dated August 8, 1990; see also Summary of Facts as to Neglect and Uncared-for Petition filed March 23, 1989).
During a home visit by DCYS on 2/24/88 the mother informed the DCYS worker that she was "tired of having to deal with DCYS and had CT Page 2451 turned over custody of Michelle to the father on 2/22/88." Then on February 24, 1988; the mother became whereabouts unknown to DCYS and everyone else. The mother has had no known contact with Michelle nor has she requested or attempted to initiate any visitation with Michelle since February 22, 1988 up to the present time. On July 10, 1990 when DCYS was to file for termination of parental rights the mother unexpectedly called the social worker and asked about her daughter. (Social Study; Exhibit D; p. 2). The mother indicated she was living in Kansas and could not come back to Connecticut. The mother was fearful of an outstanding arrest warrant in Connecticut.
On February 28, 1988 the father who has custody of Michelle from February 24, 1988 contacted DCYS about disclosures which Michelle had made about being sexually abused on numerous occasions by numerous men while with her mother. (Summary of Facts, Neglect Petition filed 3/23/89).
The father attempted to provide a home for Michelle but never followed through with Michelle's therapy between April 18, 1988 and August 19, 1988. Between October 1988 and December 12, 1988 the father and Michelle became whereabouts unknown until on the latter date the father called DCYS to voluntarily place Michelle. The father refused to disclose his whereabouts for the previous two month period. The child was then placed and the contacts and cooperation by the father with DCYS and his child became sporadic at best.
Michelle was adjudicated neglected and uncared-for on May 4, 1989; her father appearing in court and her mother being whereabouts unknown. Court expectations were established for the parents as follows: (1) visitation once per week (2) phone contact once per week (3) a psychological evaluation of the father and Michelle and the parent/child interaction (4) individual and family counseling as revealed necessary by the psychologist (5) father to obtain adequate housing (6) father to obtain stable employment.
The involvement of the father with his daughter began to wane very quickly and the court ordered psychologist, Dr. Barbara Berkowitz made specific recommendations to encourage parental involvement or in the alternative to terminate parental rights. Michelle was a child identified in need of a safe, suitable, nurturing home. (See Exhibit B; court ordered evaluation dated 7/20/89).
On December 21, 1989 an in-court review was held to reinforce the court expectations for the father and to warn him as to termination. His involvement continued to be next to none. The mother continued to be whereabouts unknown.
On June 4, 1990 DCYS received an evaluation report from Dr. David Mantell assessing the emotional and psychological status of Michelle. (See Exhibit C). This report and its recommendation was unequivocal that there should be no visitation by any family members with Michelle CT Page 2452 and that Michelle was in need of permanency planning immediately (Exhibit C, p. 3).
Michelle's father eventually signed consent forms to the termination of his parental rights and on September 27, 1990 the court after canvassing the father found his consent to be knowing and voluntary. As to the mother, the Petitioner asserts that there are perhaps no other cases which could be more compelling for the termination of parental rights.
The court makes the following findings with respect to the claims of the petitioner and respondent:
1. The respondent's claim that there were procedural infirmities with the petition are not availing. The court finds in favor of the petitioner.
2. This court finds that the petitioner has demonstrated by clear and convincing evidence that the mother has abandoned the child. Conn. Gen. Stat. 17-43a(b)1 defines abandonment as the parents failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." The fact that mother has simply not been in this child's life for over two years indicating no interest in the child's welfare demonstrates abandonment. It is clear that the mother in this case has not visited the child, not interacted in anyway with the child, has not communicated with the child or displayed any love or affection or concern for her welfare.
The court finds by clear and convincing evidence that the mother has failed to rehabilitate herself to the extent that she could assume a responsible role in the life of this child. The statutory criteria for this element necessary for termination is that the mother availed herself of services by DCYS and made herself thereafter unavailable by her voluntary act of moving outside this jurisdiction. The mother additionally failed to meet any of the court's expectations. Further, the child has bonded to her foster parents and that is underscored by Dr. Mantell's recommendation that there should be no family visitation because it would cause the child to destabilize. Michelle is now seven years of age and mother has had no contact or visits with her or DCYS, save one phone call since February 24, 1988. DCYS did not prevent either parent from maintaining contact with this child.
The court finds by clear and convincing evidence that here is no ongoing parent-child relationship as defined in Conn. Gen. Stat. 17-43a(b)(4). This mother has simply failed by her own act to meet the day to day needs of this child, both in a physical is well as emotional, moral and educational way. Furthermore any attempt by anyone to foster the re-establishment of such a relationship would not be in the best interests of this child. CT Page 2453
The court finds by clear and convincing evidence that the petitioner has proved that the child has been denied by reason of parental commission or omission the care, guidance or control necessary for the physical, educational, moral or emotional well-being. In this case, it is clear from the evidence that this child Michelle has been an abused child, because her mother allowed he to be placed in a situation where sexual molestation occurred while she was in the custody of her mother. Both of this child's parent, display, by virtue of the facts displayed on this record, a deliberate indifference to the emotional and psychological well-being of this child. The expert evidence indicates how destabilize her life was with her parents, Dr. Mantell's report indicates that this child has a capacity for psychotic decompensation and that stressful circumstances should be avoided in her life. Dr. Berkowitz states "although she presents as quiet, cooperative, polite, Michelle is plagued with inner chaos and turmoil. She is sometimes overwhelmingly depressed at the lack of nurturant/love, protection and care she has received from her mother and father." These clinical evaluations were done one year apart and indicate a child which is still dealing with enormous psychological trauma as a result of the treatment at the hands of her parents.
This court having found that the petitioner has proved by clear and convincing evidence, not only one, but all three of the statutory grounds for the termination of parental rights must examine the best interest standard as to whether or not to terminate parental rights. Those six factors have been discussed in the court's findings that the mother has failed to rehabilitate herself in anyway and need not be repeated. It is so clear from the facts on the record that DCYS offered services; that the terms of the expectations were not fulfilled; that there is no emotional tie of this child to either of her parents. Her age, seven, the paucity of any effort or inclination by the mother to adjust her lifestyle, compel the court to find that it is in the best interest of this child that she have no further relationship with her mother, let alone be returned to her mother's care. This mother has simply failed to maintain any contact with the child which would give this court any reason to believe that this child should be reunited with her mother. There was no communication either with the child of DCYS or foster parent. The mother was not prevented in any way, shape or form, from having a relationship with this child. Her own act and own decision about the way she wished to live her life precluded her ever from being an effective nurturing parent.
Her decisions not only deprive her of any colorable right that she might have claimed with respect to raising this child, but in fact, lead the court to believe that this child's psychological problems stem from the fact that as an infant and through her very early days, these parents had no ability to nurture, keep safe or assist this child in her developmental growth. The termination of parental rights in this case is not only in the best interests CT Page 2454 of this child, but it is the only way that this child will have any hope of having a future that is stable and positive.
Based on the foregoing the petition is granted. The Department of Children and Youth Services is appointed by this court to be the statutory parent for the purposes of placing Michelle into adoption and the needed permanency in her life.
DRANGINIS, J.